O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA D., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 8:19-cv-00483-KES <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**PROCEDURAL BACKGROUND**

In November 2014, Plaintiff Angela D. ("Plaintiff") applied for disability benefits under Titles II and XVI alleging a disability onset date of January 27, 2014. Administrative Record ("AR") 230-42.

On September 5, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did a vocational expert and a medical expert. AR 101-19. On October

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

18, 2017, the ALJ issued an unfavorable decision. AR 19-37.

The ALJ found that Plaintiff suffered medically determinable severe impairments consisting of "fibromyalgia, status/post left breast carcinoma, morbid obesity, and status/post bariatric surgery." AR 24. Despite her impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to do light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with some additional limitations. AR 26. Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a customer service representative, tax preparer, cashier, and file clerk. AR 29. The ALJ concluded that Plaintiff was not disabled between January 27, 2014, and the date of the decision. Id.

## II.
## ISSUES PRESENTED

This appeal presents the sole issue of whether the ALJ provided "clear and convincing" reasons for discounting Plaintiff's subjective symptom testimony. (Dkt. 24, Joint Stipulation ["JS"] at 4.)

## III.
## LEGAL STANDARD

It is the ALJ's role to evaluate the claimant's testimony regarding subjective pain or symptoms. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).[2]

---

[2] On March 24, 2016, the Social Security Administration ("SSA") published Social Security Ruling 16-3p, 2016 SSR LEXIS 4 ("SSR 16-3p"), which eliminated use of the term "credibility" from SSA sub-regulatory policy. SSR 16-3p was republished on October 25, 2017 with the revision that the ruling was "applicable on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27 (Oct. 25, 2017). Here, the ALJ issued his opinion in October 2017, such that SSR 16-3p was in effect. The Ninth Circuit has noted that SSR 16-3p is consistent with its prior precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Accordingly, citation to earlier case law is appropriate.

"[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Id. at 1112 (internal quotation marks omitted). An ALJ's assessment of symptom severity is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989).

If an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process. First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of SSA, 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted). Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only upon making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

If the ALJ's findings are supported by substantial evidence in the record, courts may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

## IV.
## DISCUSSION

### A. Summary of the Medical Evidence.

In October 2011, while undergoing cancer treatment, Plaintiff had a "normal" gait. AR 389, 393. Per her 2011 Function Report, she did not use an assistive device to ambulate. AR 275.

In January 2012, Plaintiff reported "mild pain." AR 496, 499. She had a benign bone scan. AR 503. Later in 2012, as part of some earlier disability proceedings, a doctor determined that despite her claims of increased nerve pain,

3

Plaintiff's medical evidence did not establish a "material change" in her condition. AR 418-19.

In January 2013, Plaintiff complained of "generalized bone pains that started about a month ago" and "chronic knee pains." AR 493. Plaintiff was referred to a neurologist to determine if Tamoxifen might be causing her pain. AR 495. This treating record also says, "Will refer pt to a rheumatologist to assess joint/body pains; auth requested today." AR 495. By July 2013, Plaintiff reported that she "has been doing well" and was continuing to work "for billing for rentals.com." AR 566.

In August 2013, she lost her insurance. AR 502. By March 2014, however, she had obtained new insurance. AR 502-03.

In June and November 2014, Plaintiff's treating records do not contain a fibromyalgia diagnosis. AR 443, 451, 528; compare later record at AR 439. In June 2014, x-rays of Plaintiff's lumbar spine revealed only "mild" degenerative disc disease. AR 428. In November 2014, Plaintiff complained of abdominal pain and requested "pain medication or muscle relaxant." AR 527. She was encouraged to follow up with her primary care physician. AR 528.

In April 2015, Plaintiff told the consultative examiner, Dr. Enriquez, that she had been diagnosed with fibromyalgia and osteoarthritis in 2010 based on an "extensive" workup including blood tests and x-rays, but those 2010 records are not in the AR. AR 430. Plaintiff seemed to be in "mild diffuse pain" and claimed tenderness at the tender points associated with fibromyalgia. AR 432. Dr. Enriquez observed normal or only slight limitations on Plaintiff's range of motion, 5/5 motor strength, and "normal muscle tone and bulk without atrophy." AR 433-34. Dr. Enriquez reported, however, that Plaintiff was using a cane during the appointment and exhibited a "mild limp" on the right side. AR 433. Nevertheless, Plaintiff was "able to walk unassisted." Id. Dr. Enriquez ultimately opined that Plaintiff could walk, sit, or stand with normal breaks for 6 hours in an 8-hour day.

AR 434.

In May 2015, Plaintiff had a follow-up appointment regarding her breast cancer treatment. AR 438, 508. The record notes a past fibromyalgia diagnosis, but the treating sources did not comment on any limp or ambulation difficulty. AR 438-40.

In June 2015, Plaintiff underwent radiological testing that revealed a "normal" lumbar spine and knees. AR 435. A physical examination revealed no abdominal or back tenderness. AR 453.

On August 10, 2015, Plaintiff saw Dr. Lutsky, an orthopedic surgeon to whom she was referred due to complaints of knee pain. AR 464-65. He described her as having "no acute distress" and "FROM [full range of motion];" he did not mention a limp or a cane. AR 466-67.

In contrast, a few days later on August 18, 2015, a therapist treating Plaintiff noted that she "walked with a cane and appeared to be in physical distress." AR 468.

In October 2015, Dr. Lutsky noted that Plaintiff complained of knee pain but had recently had a normal knee MRI. AR 470. He again assessed "FROM" and said nothing about a limp or a cane. AR 470-72.

In December 2015, Plaintiff decided to pursue weight-loss surgery. AR 476. Per Dr. Lutsky, her treatment plan was "diet and exercise." AR 477. She had bariatric surgery in February 2016. AR 597.

In March 2016, Plaintiff had a pre-op examination to prepare for breast reconstruction surgery. AR 478. At that time, she was "negative for extremity pains or joint discomfort." Id. Under "musculoskeletal," the treating source noted "no weakness." Id. Notes from that surgery say nothing about any ambulatory problems. AR 483-85, 492.

In June 2016, Plaintiff returned to the Pacific Cancer Medical Center after more than a year's lapse in treatment due to insurance issues. AR 552-54. She

complained of "generalized body pain due to her fibromyalgia." AR 552. She reported that "her PCP requested Lyrica for her however, it was denied." AR 554. No such record is in the AR. Plaintiff stated that she would go to her PCP for alternatives, but there is no indication in the record that she did so. Id.

In August and November 2016, Plaintiff was again "negative for extremity pains or joint discomfort." AR 584, 592.

B. **Summary of Plaintiff's Testimony.**

At the September 2017 hearing, Plaintiff testified that she experienced "constant" pain in her "whole body" that she attributed to fibromyalgia. AR 108. She first testified that sitting "for a long period of time," standing, or bending made her pain worse. AR 109. She then clarified that she could only sit for "about 10 minutes" before pain would force her to get up. Id. She estimated that she could walk for 15 minutes before experiencing cramps in her lower back. Id. She testified that she could not bend over, and she could lift a gallon of milk (about 8 pounds) but would shake while doing so. AR 26, 110. She estimated that she could lift between five and fifteen pounds. AR 112-13. She spent her typical day shifting between sitting, moving around, and laying down. AR 110. She estimated that between the hours of 9:00 a.m. and 5:00 p.m., she typically spent "four or five hours" laying down. AR 112.

She was able to drive, but "not too far" without pain in the back of her leg. AR 110. She lived alone and was able to prepare meals for herself in the microwave. AR 111. A relative helped her with housework. AR 111, 115. She testified that she could not work because working required lifting "at least 20 to 30 pounds" and standing, which she could not do. AR 112.

She was taking pain medication, but she testified that it was "not really" working, because she was "always in pain." AR 114. She used to take Norco once a day, but had recently changed to Celebrex, which she took every morning. AR 114-15.

Plaintiff completed a Function Report in 2011 when she was undergoing chemotherapy and lived with her mother. AR 269-76. At that time, she indicated that she suffered from pain and fatigue and had trouble standing for long periods of time. Id. She did not indicate any problems with sitting. AR 274. Her mother also indicated that she had no problems with sitting. AR 290. Plaintiff did not use a cane or other assistive device. AR 275.

Plaintiff last worked in October 2013 as a customer service representative. AR 311. At that time, she was able to walk for 2 hours, stand for 1 hour, and sit for 7 hours during a workday. AR 312. Her job duties included answering phones, making copies, and walking to other departments. Id. She stopped working when her department moved out of state. AR 305.

C. **Relevant Administrative Proceedings.**

First, the ALJ noted that Plaintiff was diagnosed with breast cancer in 2011, after which she received treatment; the ALJ found "no evidence of recurrence or of any significant breast cancer-related symptoms or functional limitations since the alleged onset date of January 27, 2014." AR 27. This appears uncontested. AR 114 (Plaintiff testified that her cancer is "in remission.") Plaintiff attributed her pain and resulting functional impairment to fibromyalgia. AR 113.

The ALJ discounted Plaintiff's pain testimony, finding that "her statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record, for the reasons explained in this decision." AR 27. The ALJ gave the following reasons for discounting Plaintiff's testimony: (1) lack of supporting objective evidence, (2) inconsistency with physical examinations that did not document significant functional limitations, (3) conservative treatment, and (4) unnecessary use of a cane.

   **1. Lack of Supporting Objective Evidence.**

While a claimant's subjective statements about symptoms "cannot be

rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ noted that while Plaintiff claimed arthritis in both knees and her lower back, the record does not contain any abnormal imaging of Plaintiff's knees. AR 25. The only spinal imaging in the record had "mild" findings. Id., citing AR 428. The ALJ summarized Plaintiff's treating records and then concluded that her "primary care treatment notes since the alleged onset date are largely devoid of positive objective findings." AR 28. The summary of the medical evidence above supports this conclusion.

Plaintiff argues that this reason carries little weight where a claimant suffers from fibromyalgia, because there is no objective test for determining the severity of fibromyalgia pain. (JS at 8-9.) Plaintiff, however, also told the consultative examiner that she had been diagnosed with osteoarthritis. AR 430. She also wrote in her Disability Report that her "chronic arthritis in both knees" and "arthritis in [her] low back" limited her ability to work. AR 305. Thus, the ALJ could properly comment on the absence of objective evidence showing joint narrowing or deterioration indicative of osteoarthritis.

### 2. Inconsistent with Physical Examinations.

The ALJ found, "physical examination findings throughout [Plaintiff's] treatment records are generally unremarkable." AR 27. Indeed, there is not a single physical examination after Plaintiff's alleged onset date assessing Plaintiff with significantly reduced muscle strength or range of motion. No treating source assessed her as having an abnormal gait or tender points consistent with a fibromyalgia diagnosis. To the contrary, multiple examinations found no complaints of pain or only mild complaints. See, e.g., AR 496, 499, 566, 432, 453, 584, 592. During her period of claimed disability, Plaintiff was twice cleared for

elective surgeries, all without any mention of her suffering disabling pain. AR 597, 483-85. This evidence supports the ALJ's finding.

### 3. Conservative Treatment.

While the parties dispute in the briefing whether certain treatment is, or is not, conservative, the real issue is whether the recommended treatment was more conservative than one would expect given the level of Plaintiff's claimed functional limitations and the nature of her underlying impairments. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (noting that evidence of conservative treatment "is sufficient to discount a claimant's testimony regarding severity of an impairment"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("[T]he ALJ [appropriately] noted the absence of medical treatment for claimant's back problem … suggesting that if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time.").

Here, Plaintiff testified that her pain is so severe, she is required to spend the majority of the day laying down. AR 112. Despite this high level of claimed impairment, the ALJ noted that her only treatment was pain medication. AR 26, 27 (citing prescription records). The ALJ noted "there is no evidence that the claimant was treated by or referred to a rheumatologist." AR 27.

In fact, Plaintiff was referred to a rheumatologist. AR 495. The record, however, contains no treatment records from a rheumatologist, so it appears that Plaintiff did not follow up, perhaps because of her insurance troubles at the time. The Court finds that this reason, as articulated by the ALJ, was not supported by evidence in the record.[3]

---

[3] Given the severity of Plaintiff's claims, one would expect to see referrals to other forms of pain treatment (like injections, physical therapy, or acupuncture), but the ALJ did not discuss the lack of such referrals as a reason to discount Plaintiff's testimony. Further, it does not appear that Plaintiff pursued this rheumatology referral. See AR 99 (October 2017 record noting, "She reports

9

### 4. Unnecessary Use of a Cane.

Where a claimant asserts that he/she must use a cane (although there is no evidence of medical necessity) or displays a limp only periodically, such facts support a finding that the claimant is exaggerating his/her impairments. See, e.g., Rojas v. Astrue, No. 10CV2461 JLS (RBB), 2012 U.S. Dist. LEXIS 36748, at *42 (S.D. Cal. Mar. 19, 2012) (holding ALJ gave clear and convincing reason for discounting claimant's subjective symptom testimony where the ALJ described how the claimant used a cane at a consultative evaluation and limped without it, although there was "no medical basis for Plaintiff's cane use").

Here, the ALJ noted that the only people who reported seeing Plaintiff use a cane were (1) the consultative examiner in April 2015, and (2) a therapist in August 2015. AR 27. The ALJ correctly noted that no medical source had prescribed a cane. Plaintiff's most recent medical records before April 2015 did not even contain a fibromyalgia diagnosis, let alone observations of a limp with a diagnosis for a cane. AR 443, 451, 527-28. In between April 2015 and August 2015, Plaintiff had "normal" imaging of her knees, examinations that revealed no tenderness, and a full range of motion. AR 435, 453, 466-67. Dr. Lutsky saw Plaintiff just days before the therapist wrote her note, and he said nothing about Plaintiff limping or needing a cane. AR 464-67. Instead, Dr. Lutsky counselled Plaintiff to exercise. AR 467.

This evidence supports the ALJ's finding that Plaintiff was exaggerating her symptoms by taking a cane to her consultative examination and walking with a limp.

//
//

---

possibly having fibromyalgia but has not been on any fibromyalgia treatment").

10

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: January 24, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge